**DAVIS AIRFOILS, Inc.,**

v.

**THE UNITED STATES.**

No. 48775.

United States Court of Claims.
Oct. 5, 1954.

Edward Gallagher, Washington, D. C., for plaintiff.

H. L. Godfrey, Washington, D. C., with whom was Asst. Atty. Gen., Warren E. Burger, for defendant.

Jesse B. Grove, Jr., Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

■ There are two patents involved in this case. The first patent No. 1,942,688 was issued to Davis January 9, 1934, on an application filed in the Patent Office May 25, 1931. This patent (findings 23–34) which relates to the development of an airfoil by means of certain mathematical formulas, was held invalid by the Commissioner of this court (findings 32 and 34) in that it would require experimentation with the values to be used in the formulas as expressed in claims 1–12, inclusive, and claim 13. Claim 7 of the patent was also held to be invalid (finding 29) because of a prior publication. Upon consideration of the record, the exceptions and the briefs and arguments of counsel for the parties, we adopt the Commissioner's findings.

The second Davis patent No. 2,281,272, was issued April 28, 1942, on an application which was not filed until May 9, 1938. There was thus an interval of over four years (finding 35) between the issue date of the first Davis patent and the filing date of the second Davis application. This patent also relates to a family of airfoils derived from four formulas.

■ The specification of the first Davis patent indicates to those skilled in the art that the constants $A$ and $B$, which are the basis of the formulas in that patent, may be varied in a mathematical sense so that one may be negative while the other is positive. Also, in the first Davis patent, with the exception of claim 13, the constants $A$ and $B$ are not limited to any specific value. If in the formulas of the first Davis patent the value of $B$ is selected to equal $- A$, and the numerical figure 0.6366198 in these formulas is written as $\frac{2}{\pi}$ (two divided by 3.1416) the first four formulas of the first Davis patent become identical with the four formulas claimed

in the second patent, and the family of airfoils covered by the claims of the second patent is also covered by the claims of the first patent. The second patent is held void (finding 37) for the reasons hereinafter stated, because of double patenting.

### Double Patenting

■ A patent is a contract between the inventor and the public, the terms of which are formulated by the United States Patent Office. The inventor in such a contract gives as a consideration to the public a new and useful art, machine or composition of matter, and, in return, the public gives as a consideration to the inventor a monopoly expressed by the claims of the patent for a period limited by statute to 17 years, after which such monopoly expires and becomes dedicated to the public.

■ Where an inventor subsequently receives a second patent in which the monopoly expressed in the claim or claims is the same as that covered by the first patent, even though the phraseology of the claims differs therefrom, the 17-year period of monopoly is extended, and the second patent is therefore void because of double patenting, the inventor's rights having been exhausted by the first patent. In this situation the period of monopoly was extended more than 17 years by the issuance of the second Davis patent.

Plaintiff in this situation relies upon H. C. White Co. v. Morton E. Converse & Son, 20 F.2d 311, 313. In that case the first patent was issued as a design patent, and the second patent was a mechanical patent. On the facts in that case the court stated as follows:

"A patent is a bargain between the sovereign and the inventor in which the consideration moving to the inventor is the grant. Whatever may be the result if throughout the granted term the inventor has had the enjoyment of his apparent monopoly, it seems to us that, when his patent is declared invalid before its expiry, the consideration fails and the counter consideration moving from the inventor—i. e., the dedication of the disclosure—may be revoked. There being no chance for apportionment of the dedication, it ought not therefore to be held that a subsequent and valid patent is itself invalidated because of the original dedication. The whole vice of double patenting arises from the fact that the second patent defeats the dedication made in the first by extending the term of the original monopoly. Anything, therefore, which relieves the inventor of the first dedication, sets him free again to dedicate the disclosure, if not otherwise abandoned, and leaves it as a valid consideration for the second grant. Since the design patent had not expired at the time of the decree declaring it void, the inventor had not enjoyed his entire consideration, and the second grant was adequately supported by the disclosure."

The present case, however, differs from the White Co. case in two aspects— (1) The first Davis patent expired January 9, 1951, during the pendency of the present suit. The plaintiff therefore enjoyed the monopoly granted in the first patent during the full 17-year period of that patent (a patent being assumed to be valid until declared otherwise) and as a matter of fact, plaintiff had entered into a license agreement which paid it royalties in substantial amounts (findings 4 and 5). Plaintiff therefore appears to have exhausted its monopoly predicated upon its first patent prior to its invalidation.

■ (2) Plaintiff's application of May 9, 1938, which matured into the second patent in suit, was not filed in the Patent Office until over four years after the first Davis patent issued. Under the patent statutes, 35 U.S.C. 1940 Ed. § 31,[1] plaintiff's first patent is therefore ef-

1. Now 35 U.S.C.A. §§ 101, 102.

fective both as a patent and a prior publication available to the public more than two years prior to the filing date of the second application, and, insofar as it claimed the same monopoly, it becomes a statutory bar, thereby invalidating the second Davis patent.

A discussion of an earlier patent invalidating a later patent, the later patent also being void for double patenting, is found in the case of Handley Page, Ltd., v. Leech Aircraft, 2 Cir., 126 F.2d 267, and cases therein cited.

The present case is now before the court on the legal question of the plaintiff's right to recover.

On June 29, 1943, plaintiff entered into a license agreement with defendant, identified as "Contract W–535 ac–40218 (10569)," and effective on April 1, 1943. This contract is hereinafter referred to as the contract in suit.

A true copy of this contract is appended to the petition as Appendix A, except that pursuant to a stipulation filed by the parties, the last sentence of paragraph "First" of the contract should be amended by removing the parentheses and by making plural the word "airplane."

The corrected sentence then reads:

> "Licensor agrees not to make any claim other than as provided herein against Government by virtue of any delivery, sale or other disposition of airplanes upon which a royalty has been paid to Licensor."

The contract in suit specifically states that it "shall continue in effect until the end of the present National Emergency and for six (6) months thereafter." The contract was in full force and effect when the transactions involved in this case occurred.

The plaintiff alleges breach of the terms of this contract by the unauthorized disposal by the Government of certain airplanes.

The plaintiff alleges that Lend-Lease and Surplus Property disposal by the Government does not represent a governmental purpose under the license agreement in suit; and that it breached the license agreement when it performed such purposes, even though the license agreement contains no clauses prohibiting the performance of such governmental purposes.

The Government contends that the broad language of paragraphs "First" and "Second" of the license agreement permits Lend-Lease and Surplus Property disposal, and that such disposal clearly constitutes a governmental purpose. The Government further contends that the negotiations leading up to the signing of the license agreement, as shown in the findings, clearly establish that such was the expressed intent of the Government, and that it signed the license agreement with such expressed intent.

The Government also contends that, under the provision of the last sentence of paragraph "First" of the license agreement, once the $5 royalty has been paid as to any particular airplane, the plaintiff cannot make a further claim against the Government by virtue of any delivery, sale or other disposition of that particular airplane.

The Government further contends that plaintiff's claim for alleged breach of contract fails because of a failure of consideration due to the invalidity of the two licensed United States Davis patents. The issue of the defendant's right to contest the validity of the patents was decided in a previous hearing, 110 F. Supp. 460, 124 Ct.Cl. 499.

During the war years subsequent to April 1, 1943, the defendant caused to be manufactured 17,383 airplanes embodying the alleged inventions of the two United States Davis patents in suit (finding 38). And no other patents, United States or foreign, were found to be involved in this manufacture.

In accordance with the terms of the license agreement, the plaintiff has received the $5 royalty for each of these 17,383 airplanes (finding 39).

Thus, the plaintiff has received all the royalties agreed to be paid it under the

license agreement in suit. But plaintiff alleges breach of contract growing out of the Lend-Lease and Surplus Property disposal of certain of these airplanes on which the $5 royalty has already been paid.

The plaintiff claims that to the extent that its invention was embodied in airplanes caused to be manufactured by defendant and used throughout the world by governments, and parties, other than the United States Government, and to the extent that airplanes embodying such inventions have been disposed of by defendant for other than governmental purposes, plaintiff has been damaged by the difference between a fair and reasonable royalty, namely, the sum of $800 per airplane, and the reduced royalty set forth in the agreement of $5 per airplane.

■ In view of our conclusions above set forth herein that the two Davis patents upon which the license of April 1, 1943, supra, and plaintiff's claims herein are based, are invalid, we find it unnecessary to discuss in detail the facts and the respective contentions of the parties relative to said license agreement, as to what the liability of the Government would be if the patents upon which such license was based were valid. It is sufficient to say that we agree with defendant's position that the invalidity of the Davis patents results in a failure of consideration for the license agreement (finding 3), and that this is a bar to plaintiff's claim for damages for the alleged breach of such agreement.

Upon the facts and under the terms and provisions of the patent statutes the plaintiff is not entitled to recover, and its petition is dismissed.

It is so ordered.

JONES, Chief Judge and MADDEN, J., concur.

WHITAKER, Judge (concurring).

The majority opinion says the patents upon which plaintiff sues are invalid because they require experimentation "with the values to be used in the for-

mulas as expressed in claims 1–12, inclusive, and claim 13." For this reason it is decided that plaintiff is not entitled to recover. I am not sure that I understand what the majority opinion means. I prefer to rest the decision on the ground that the license granted the defendant covers the sales of which the plaintiff complains. I think it does.

LARAMORE, Judge, took no part in the consideration or decision of this case.